UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| H&H PHARMACEUTICALS, INC. | Case No. 2:16-cv-02946-RFB-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| CAMBREX CHARLES CITY, INC.<br>CAMBREX NORTH BRUNSWICK, INC. | |
| Defendant(s). | |

## I. INTRODUCTION

Before the Court is Defendants Cambrex Charles City, Inc. and Cambrex North Brunswick's (collectively "Cambrex") Motion for Summary Judgment. ECF No. 51.

## II. PROCEDURAL BACKGROUND

Plaintiff H&H Pharmaceuticals, Inc. ("H&H") filed its complaint on December 20, 2016. ECF No. 1. In the complaint, H&H asserted claims against Cambrex for breach of contract, contractual breach of implied covenant, tortious breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, and negligent misrepresentation. Cambrex moved to dismiss on January 27, 2017. ECF No. 9. On July 27, 2017 the Court dismissed the tortious breach of implied covenant of good faith and fair dealing and breach of fiduciary duty claims, and allowed for expedited discovery on the statute of limitations. ECF No. 18. Cambrex answered on August 9, 2017. ECF No. 17. Cambrex moved for summary judgment on the statute of limitations on December 13, 2017. ECF No. 24. On May 16, 2018, the Court denied the motion. ECF No. 29. On June 27, 2019, Cambrex filed the instant motion for summary judgment. ECF No. 51. The motion was fully briefed. ECF Nos. 57, 58. The Court heard oral argument on the motion

on March 11, 2020. This written order now follows.

## III. FACTUAL BACKGROUND

Cambrex is a contract development and manufacturing organization ("CDMO") specializing in branded and generic small molecule active pharmaceutical ingredients ("APIs"), advanced intermediates, and custom development and manufacturing of controlled substances. As a CDMO, Cambrex serves other companies in the pharmaceutical industry on a contract basis to provide comprehensive services from drug development through drug manufacturing. Cambrex has been developing and manufacturing APIs for over 35 years.

Around 1979, Jacob Hack ("Hack") developed certain chemistry and conversion processes, allegedly not available on the open marketplace and not generally publicly known, for converting raw opium and concentrate of poppy straw into opiate-based raw materials by chemical extraction, recovery and conversion methods ("the Conversion Methods"). On September 17, 1999, Hack and Richard G. Herman ("Herman") formed H&H Pharmaceuticals ("Plaintiff" or H&H"), and Hack contributed the Conversion Methods to the company.

On June 27, 2007, Herman communicated with Richard Giles ("Giles"), then Director of Business Development for Cambrex, regarding a potential business relationship between H&H and Cambrex. Following the discussion between Herman and Giles, counsel for H&H and Cambrex began negotiating the terms of a Confidentiality Agreement. The parties also discussed a Bilateral Non-Disclosure Agreement ("NDA").

The parties fully executed the Confidentiality Agreement on October 19, 2007. By its terms, the NDA was only to take effect if H&H and Cambrex entered into a formal business relationship. On or about December 11, 2007, Herman traveled to New Jersey to meet with Cambrex representatives. The purpose of the meeting was for Herman to provide for Cambrex's

consideration a set of manuals that detailed the Conversion Methods ("the Manuals"). The Manuals consisted of four separately-bound manuals, which were small enough to fit in Herman's briefcase. In total, the Manuals consisted of 315 pages of materials, plus dividers, and front and back covers. Herman gave the Manuals to Cambrex.

On June 13, 2008, H&H also provided to Cambrex documents concerning pro-liposome technology, subject to the terms of the Confidentiality Agreement. This material included the "Patent Application 60/192,465 filed April 18, 2008".

On October 24, 2008, Dan Giambattisto ("Giambattisto"), Vice President of Sales & Business Development for Cambrex, emailed Herman to state that Cambrex decided not to pursue development of either H&H's opiate or pro-liposome technology. Giambattisto further stated in the email that he had arranged for the Manuals to be sent back to H&H as soon as possible.

On October 27, 2008, Herman sent a response stating in part: "We expect Cambrex to stand by the confidential agreements it has with H&H for both our Opiate Methods and Technology as well as our Pro-Liposome Delivery Method to the full extent and conditions of the confidential agreement between our two companies." In response, Giambattisto confirmed that "Cambrex [would] abide by the terms of the confidentiality agreement between the 2 companies."

On or shortly after October 24, Cambrex sent soft-sided package of materials to Herman's residence via UPS Next Day Air.

In February 2014, Herman went through the Federal Register for purposes related to other litigation. Herman discovered that Cambrex applied for and received DEA approval for certain Schedule II narcotics, such as hydrocodone and morphine. During his review at that time, Herman also noticed that Cambrex had applied for in 2007, and received approval in 2009, to import raw materials including poppy straw concentrate and raw opium.

Herman became suspicious after this review, and decided to open the package containing the Manuals, which had remained unopened since 2008. Upon opening the package in October 2016, Herman and Hack discovered that the package included a document they had never seen before – a page that showed copies of the Manuals may have been made and circulated to certain Cambrex employees. Those copies were not included in the package. There also appeared to be other missing documents. In 2015 or 2016, Cambrex began to actively manufacture opiate-based products.

H&H thus brough the instant lawsuit, asserting that Cambrex used proprietary information and made copies of materials that were not destroyed, in violation of the confidentiality agreement and to support its manufacture of opiate-based products.

**IV.    LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986).

When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**V. DISCUSSION**

The Court finds it must grant summary judgment, because H&H has failed to offer sufficient proof of damages for any of its claims.

Summary judgment is appropriate when proof of damages is an essential element of a party's claims, and the party "has no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." Weinberg v. Whatcom County, 241 F.3d 746, 751 (9th Cir. 2001) (internal citations omitted).

H&H argues that its damages will be calculated "based upon the combined enterprise value of a joint venture between the Defendant and the Plaintiff at the time of the signed non-disclosure agreement to present." Pl.'s Opp. Mot. Dismiss 13. However, H&H has not submitted any documents identifying the amount of damages, describing how these damages shall be calculated, nor has it submitted any expert testimony on the matter to this Court.

Proof of damages is an essential element of all of H&H's claims. See Road & Highway Builders v. N. Nev. Rebar, 284 P.3d 377, 382 (Nev. 2012) (compensatory damages element of breach of contract claims): Hilton Hotels Corp. v. Butch Lewis Productions, Inc. 862 P.3d 1207, 1209 ( Nev. 1993)(breach of implied covenant of good faith and fair dealing give rise to award of contract damages); Dow Chemical Co. v. Mahlum, 970 P.2d 98, 110 (Nev. 1998) abrogated on other grounds by GES,Inc. v. Corbitt, 21 P.3d 11 (Nev. 2011) (prima facie case for fraudulent concealment requires proof that plaintiff sustained damages); Bill Stremmel Motors, Inc. v. First Nat. Bank of Nevada, 575 P.2d 938, 940 (Nev. 1978) (proof of pecuniary loss essential element of negligent representation claim).

Because H&H has failed to proffer competent evidence from which a jury or factfinder could estimate damages, or in the case of H&H's negligent misrepresentation claim, pecuniary loss, the Court grants summary judgment to Cambrex on all claims.

The Court further declines to consider the other arguments of the summary judgment motion as the Court finds its ruling to be dispositive of all claims and issues.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 51) is GRANTED.

The Clerk of the Court is instructed to close the case.

DATED: March 16, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**